For the foregoing reasons, we affirm the Commission's order.

*So ordered.*

**In re J.R.; T.R., Appellant.**

**No. 10–FS–38.**

District of Columbia Court of Appeals.

Argued Feb. 22, 2011.

Decided Dec. 22, 2011.

Ronald A. Colbert for appellant.

Tobey K. Oliver, Assistant Attorney General for the District of Columbia, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time of argument, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee District of Columbia.

Dennis Eshman, Guardian Ad Litem for J.R.

Gary Jacobs, for appellee J.B., filed a statement joining the briefs of appellee District of Columbia and the Guardian Ad Litem.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and RUIZ,** Associate Judge, Retired.

** Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

BLACKBURNE–RIGSBY, Associate Judge:

Appellant T.R. challenges the trial court's jurisdiction to conduct neglect and custody proceedings regarding her child, J.R., as well as the trial court's ultimate finding that J.R. was a "neglected child" under D.C.Code § 16–2301(9)(A)(ii) (2002 Supp.). Appellant specifically argues that: (1) the court lacked jurisdiction to issue a pre-petition custody order over J.R.[1]; (2) the court erred in exercising temporary emergency jurisdiction over J.R. on the basis of past and ongoing events; and (3) the evidence was insufficient for the court to find that J.R. was neglected. We disagree and affirm.

## I.

Appellant is the biological mother of respondent, J.R., who was born on February 28, 2008, in Maryland. Appellant has been a ward of the District of Columbia ("District") for more than a decade as a respondent in her own neglect matter. For most of the past decade, appellant has lived in foster homes in Maryland, where she was placed by the CFSA. J.R. has resided with appellant in Maryland since her birth. Beginning in April 2008, appellant engaged in a troubling pattern of alleged neglectful behavior towards J.R. including: providing spoiled formula and low-fat cow's milk to J.R. at daycare, which caused J.R. to vomit and become dehydrated; putting J.R.'s health at risk when she brought J.R. with her to an unknown man's home to have sex with the man, in the presence of drugs; exposing J.R. to harm when she left J.R. on unstable surfaces, resulting in J.R. falling to the ground; and driving without a license while J.R. was in the car. The government requested a pre-petition custody order to remove J.R. from appellant's care, which the magistrate judge issued on the same day.[2] J.R. was subsequently removed from appellant's care pursuant to the custody order when appellant and J.R. were in the District of Columbia attending appellant's hearing in D.C. Superior Court regarding her own neglect matter.

At the initial hearing in the neglect proceeding, the magistrate judge exercised temporary emergency jurisdiction and held a probable cause hearing. See D.C.Code § 16–4602.04(a) (2001) ("A court of the District has temporary emergency jurisdiction if the child is present in the District and the child has been abandoned or it is necessary in an emergency to protect the child because the child ... is subjected to or threatened with mistreatment or abuse."). The Prince George's County Circuit Court in Maryland declined to exercise jurisdiction over the matter, though appellant and J.R. resided in Prince George's County, in light of appellant's existing neglect case in the District. The case proceeded to trial in the District, and the magistrate judge found that J.R. was a neglected child under D.C.Code § 16–2301(9)(A)(ii), and issued written findings of fact and conclusions of law. Appellant challenged the neglect determination and

1. We need not address whether the pre-petition custody order was properly issued, as the matter was rendered moot by subsequent determinations. As noted in the government's brief, the pre-petition custody order's issuance was immediately followed by a probable cause hearing justifying the continued custody of J.R. by the District of Columbia Child and Family Services Agency ("CFSA"), and a disposition hearing where the magistrate judge committed J.R. to CFSA's custody. Therefore, "a remand to correct an order that no longer affects [J.R.'s] custodial status would have no effect on her current situation[,]" and need not be addressed here. In re Smith, 880 A.2d 269, 275 (D.C.2005).

2. See Super. Ct. Neg. R. 4; D.C.Code § 16–2309(a)(3)–(6) (2001).

argued that the evidence was insufficient to support the finding that J.R. was a neglected child. On December 14, 2009, an associate judge of the Family Court affirmed the magistrate judge's order. This appeal followed.

## II.

### A.

 On appeal, appellant challenges the trial court's exercise of temporary emergency jurisdiction over J.R. on the basis that past events which occurred in Maryland did not constitute a genuine emergency. We review questions concerning the trial court's jurisdiction *de novo. See Martin v. District of Columbia Courts,* 753 A.2d 987, 991 (D.C.2000). The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) establishes the bases for subject matter jurisdiction over custody matters in the District, setting forth rules to govern jurisdiction when more than one state may be involved, in order to prevent jurisdictional conflicts. *See* D.C.Code §§ 16–4601.01 to –4605.03 (2001 & 2009 Supp.). As stated by the magistrate judge in this proceeding, "the intent of the statute was to avoid conflicting orders in two different jurisdictions, not that *no* court would have jurisdiction." (Emphasis added.) Under the UCCJEA, the District has jurisdiction to enter an initial or new custody order under any of the following four circumstances: the Dis-

trict is the child's home state, the child has a significant connection to the District, the District is a more appropriate forum for the proceeding, or the District provides the child's last chance for relief. D.C.Code § 16–4602.01(a)(1)–(4) (2001). In addition to these four circumstances, the court may assume temporary emergency jurisdiction to determine the custody of a child if the child is physically present in the District and it is immediately necessary to protect the child because the child has been threatened with mistreatment or abuse. D.C.Code § 16–4602.04(a); *see Assidon v. Abboushi,* 16 A.3d 939, 943 (D.C.2011) (affirming award of attorney's fees "necessary to protect the interests of the child" where trial court had emergency jurisdiction under the UCCJEA (citation omitted)).

 Appellant argues that temporary emergency jurisdiction, the basis of the trial court's exercise of jurisdiction, is reserved for limited and exigent circumstances which are not presented in this case. However, as the government contends, we need not reach the issue of whether temporary emergency jurisdiction was warranted where, as here, non-emergency jurisdiction was justified.[3] Non-emergency jurisdiction can be established where: (1) the home state of the child has declined to exercise jurisdiction on grounds that the District is a more appro-

---

**3.** We may affirm the trial court's jurisdiction on different grounds, where no "procedural unfairness" will result. *See Nat'l Ass'n of Postmasters of the U.S. v. Hyatt Regency Washington,* 894 A.2d 471, 474 (D.C.2006) ("Where there will be no procedural unfairness, 'we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court.' ") (quoting *In re Walker,* 856 A.2d 579, 586 (D.C.2004) (per curiam)). We find no such procedural unfairness here, as appellant

has been given an opportunity to respond to the government's argument on this issue. *See Link v. District of Columbia,* 650 A.2d 929, 930 n. 2 (D.C.1994). Since we conclude that the trial court had jurisdiction on other grounds, we decline to address appellant's argument that the trial court abused its discretion in denying appellant's January 2009 Motion to Dismiss for Lack of Jurisdiction, based on appellant's contention that temporary emergency jurisdiction did not exist.

priate forum[4]; (2) the child and at least one parent have significant connections with the District beyond mere physical presence; and (3) substantial evidence is available in the District "concerning the child's care, protection, training and personal relationships." *See* D.C.Code § 16–4602.01(a)(2). Alternatively, jurisdiction can be found under the UCCJEA where all other courts having jurisdiction decline to exercise such jurisdiction on grounds that the District is a more appropriate forum to determine the custody of the child. D.C.Code § 16–4602.01(a)(3). Both mechanisms for establishing jurisdiction outside of the child's home state exemplify the overarching mission of the UCCJEA to prevent ongoing harm to neglected children, by providing highly elastic means for avoiding jurisdictional conflict.

Given the UCCJEA's overarching purpose and flexible alternatives for establishing jurisdiction, the court properly exercised jurisdiction over J.R.'s custody proceeding. When J.R.'s home state,[5] Maryland, declined jurisdiction on grounds that the District had a significant connection to this matter and would be a more appropriate forum to determine J.R.'s custody, the District was authorized to exercise non-emergency jurisdiction under D.C.Code § 16–4602.01. The District had a longstanding familiarity with appellant's family and custody matters, and was best suited to access information that would be integral to assessing the interests of J.R. in a neglect determination. Further, J.R. and her parents had significant contacts with the District based upon appellant's status as a ward of the District, CFSA's ongoing oversight of appellant's family and custody matters, and J.R.'s father's longstanding residence in the District. Finally, there is substantial evidence present in the District to satisfy the requirements of D.C.Code § 16–4602.01(a)(2)(B), because appellant and J.R. were originally placed in Maryland by CFSA, a District of Columbia agency, pursuant to an order from the District of Columbia Superior Court. In addition, appellant's status as a ward of the District supervised by CFSA entailed regular meetings with an assigned Community Based Intervention worker, and other CFSA social workers, whose oversight of appellant provided many opportunities to witness J.R.'s "care, protection, training, and personal relationships[.]" *See* D.C.Code § 16–4602.01(a)(2)(B). Thus, it would undercut the remedial intent of the UCCJEA to prevent the District from exercising its jurisdiction in this case, as the District has the resources to most expediently remove the child from circumstances of neglect and the child's home state, in light of the District's interest in the case, has declined to take action. Accordingly, we

---

4. Section 16–4602.07(b) outlines several factors to be considered to assist the home court in evaluating whether it or another jurisdiction is a more appropriate forum for the custody proceeding: (1) whether domestic violence has occurred, or is likely to continue, and which state will best protect the parties and the child; (2) the length of time the child has lived outside of the District; (3) the distance between the courts involved; (4) the relative financial circumstances of the parties; (5) any agreement of the parties as to a state's jurisdiction; (6) the nature and location of evidence required to resolve the matter, including the child's testimony; (7) the ability of each state's courts to decide the issues expeditiously and the procedures needed to present evidence; and (8) the familiarity of the court of each state with the facts and issues in the case. D.C.Code § 16–4602.07(b)(1)–(7).

5. Under the UCCJEA, a "home state" is defined as a "state in which a child lived with a parent or person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding." D.C.Code § 16–4601.01(8).

hold that the District had jurisdiction over J.R.'s neglect proceeding under § 16–4602.01 of the UCCJEA.

### B.

■ Appellant next challenges the trial court's finding of neglect on two grounds: (1) that the evidence was insufficient to demonstrate neglect on the basis of J.R.'s lack of proper parental care or control, as any instances of alleged abuse were attributable to financial hardship; and (2) that the court's finding of neglect was erroneously founded upon consideration of events occurring in Maryland. In reviewing a sufficiency challenge, we view "the evidence in the light most favorable to the [District], giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences." *In re T.M.*, 577 A.2d 1149, 1151 (D.C.1990); *see also In re S.G.*, 581 A.2d 771, 774–75 (D.C. 1990). We will not reverse the trial court's finding of neglect unless it was "plainly wrong or without evidence to support it." *In re G.H.*, 797 A.2d 679, 683–84 (D.C. 2002) (quoting D.C.Code § 17–305(a) (2001)) (internal quotation marks omitted).

■ In child neglect proceedings, the District has the burden to show, by a preponderance of the evidence, that a child has been neglected under D.C.Code § 16–2301(9)(A). *In re E.H.*, 718 A.2d 162, 168 (D.C.1998). A child is neglected when the child lacks "proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or custodian[.]" D.C.Code § 16–2301(9)(A)(ii). As the neglect statute is a remedial enactment, which is to be construed liberally to protect the interests of children, the trial court in neglect proceedings is directed to consider the "entire mosaic" of the child's past experiences related to the allegations of neglect. *See In re S.G., supra*, 581 A.2d at 778; *In re A.H.*, 842 A.2d 674, 684 n. 15 (D.C.2004) ("We have directed the trial court in neglect proceedings to consider the 'entire mosaic' of the child's history and experience relevant to the allegations of neglect[.]" (citation and internal quotation marks omitted)); *In re T.G.*, 684 A.2d 786, 788 (D.C.1996) ("[T]he 'entire mosaic' includes an examination of any history of, but also the reasons for, neglect—*i.e.,* chronic indifference, carelessness, dereliction, inability to perform, etc.").

■ Here, the trial court's finding of neglect was based upon ample evidence of J.R.'s lack of parental care and control, notably independent of any financial hardship faced by appellant. In fact, as the trial court noted, financial limitations would not justify J.R.'s treatment, as appellant received support services in her own neglect matter through CFSA, including subsidized day care for J.R. Where there is no nexus between the act underlying the finding of neglect and the mother's financial status, no other evidence is needed to show that the deprivation is based upon reasons outside of lack of financial means. *In re A.H., supra*, 842 A.2d at 688. Instead, the trial court's finding of neglect was based upon appellant's refusal to utilize the CFSA-sponsored services to aid her in parenting J.R. and her deliberate refusal to take advice from other professionals as to J.R.'s proper care. In sum, the magistrate judge concluded that appellant exhibited a brash disregard for J.R.'s physical and emotional health at a time when J.R. was too young to protect herself against the immediate harms of parental neglect. In her written findings of fact and conclusions of law, the magistrate judge stated, "[Appellant] does

not want the advice or interference of others; yet she lays the responsibility for [J.R.'s] care on their shoulders when a problem arises. These incidents are a result of more than just disagreements in parenting style; they represent the failure of [appellant] to provide proper parental care."[6] Therefore, it is clear the trial court's finding of neglect was unrelated to any financial hardship that appellant may have suffered, and was instead based upon appellant's repeated indifference towards J.R.'s well-being.

Appellant further challenges the trial court's consideration of nine events which occurred in Maryland (in addition to three events which occurred in the District) in its determination of neglect, though appellant cites no specific legal authority to support her challenge. As the magistrate judge noted, though each of the individual findings alone might not have resulted in J.R.'s removal, the court was obligated to examine their collective impact on J.R. CFSA had ongoing responsibility for oversight of the appellant, requiring her to regularly visit the District for status hearings, providing her with numerous services to aid her in caring for J.R., and was ultimately responsible for her presence in Maryland. The trial court therefore did not abuse its discretion when it relied on the testimony of government witnesses as to the nine Maryland events, and considered the "entire mosaic" in its determination of neglect. *See In re A.H., supra,* 842 A.2d at 684 n. 15; *see also In re N.P.,* 882 A.2d 241, 245–46 (D.C.2005) (affirming a finding of neglect on the basis of events occurring outside of the District). Omission of events occurring outside of the District, in light of the overwhelming con-

nection of appellant to the District and the several instances of repeated neglect within the District, would be counter to the overall remedial intent of our neglect laws to consider the entire scope of a child's circumstances to ensure their safety. Accordingly, the evidence was sufficient to sustain the trial court's conclusion that J.R. was a "neglected child" under D.C.Code § 16–2301(9)(A)(ii).

*So ordered.*

---

6. This reasoning was echoed by the associate judge's review of the magistrate judge's neglect finding: "[T]he evidence at trial shows . . . that despite numerous interventions supporting her and teaching her, [appellant] has

consistently refused to accept the help, and consistently placed [J.R.] at grave risk. There is ample support in the record for the Magistrate Judge's finding of neglect."