Barbara KENDA, Appellant,

v.

Boris PLESKOVIC, Appellee.

Nos. 09–FM–1082, 10–FM–16.

District of Columbia Court of Appeals.

Argued Sept. 23, 2011.

Decided March 22, 2012.

See also 878 N.E.2d 222.

Barbara Kenda, pro se.

James G. Nolan, Chevy Chase, MD, for appellee.

Allen Snyder, Children's Law Center, with whom Amy Katherine Smith was on the brief, appointed by the court as Amicus Curiae.[1]

Before FISHER, Associate Judge, and STEADMAN and REID, Senior Judges.[2]

REID, Senior Judge:

This case has involved child custody, child support, and parenting litigation in three jurisdictions—the District of Columbia, the State of Indiana, and London, England. The litigation began in the District of Columbia where in 2002, the Superior Court entered a decree of absolute divorce in response to appellant Barbara Kenda's complaint against appellee Boris Pleskovic; the court also determined custody over the couple's minor child, A.P.K., pursuant to the District of Columbia's Uniform Child–Custody Jurisdiction and Enforcement Act ("UCCJEA"). The litigation entered a new phase in 2005, when Ms. Kenda filed a motion in Indiana to alter Mr. Pleskovic's parenting schedule, and Mr. Pleskovic countered by seeking modification of custody. The third phase of the litigation took place in London in 2006, and after a final decision in the Indiana litigation, the fourth phase unfolded in the District of Columbia, in 2007.[3]

In the matter now before us, Ms. Kenda appeals from the Superior Court of the District of Columbia's denial of two motions she filed relating to (1) the custody of the minor child, and (2) her request that Mr. Pleskovic be required to pay her attorneys' fees. First, she contends that the Superior Court had " 'exclusive, continuing jurisdiction' over the custody order" and "[b]ecause there was no evidence that the [Superior Court] had declined jurisdiction, the Indiana trial court was barred from exercising jurisdiction or addressing the custody issues raised in [Mr. Pleskovic's]

---

1. We express our appreciation to the Children's Law Center for serving as a neutral amicus curiae in this matter, at the request of the court.

2. Judge Reid was an Associate Judge, Retired, at the time of argument. Her status changed to Senior Judge on December 12, 2011.

3. Yet another phase of the litigation occurred in Slovenia in 2011, and is continuing in the Superior Court. *See Kenda v. Pleskovic*, DRB3179–01, 2007 WL 4593303 (D.C.Super.Ct. January 17, 2012), Memorandum Opinion and Order, DAILY WASHINGTON LAW REPORTER, February 27, 2012, at 420. This phase of the litigation is not before us.

petition"; and further, she asserts that she "did not waive her jurisdiction argument by filing a petition to modify [Mr. Pleskovic's] parenting time in Indiana." Second, she argues that the Superior Court abused its discretion by denying her request for attorneys' fees after she "largely won the complex and lengthy custody case that lasted from May 2007 to July 2009," and that Mr. Pleskovic "should be ordered to reimburse [her] at least for some of her payments for attorney's fees that total over $80,000."

We hold that Ms. Kenda is judicially estopped from asserting that Indiana lacked jurisdiction over the issue of A.P.K.'s custody because both she and Mr. Pleskovic availed themselves of Indiana's jurisdiction, engaged in substantial litigation, and resolved their London litigation by agreeing "that all matters relating to the welfare of [A.P.K.] are at present vested in the ... Indiana [court]." We also conclude that the Superior Court did not abuse its discretion by denying Ms. Kenda's request for attorneys' fees.

## FACTUAL SUMMARY

The record reveals that Ms. Kenda and Mr. Pleskovic are nationals of Slovenia. Mr. Pleskovic is an economist who has been a longstanding employee of the World Bank; he has been a bona fide resident of the District of Columbia.[4] Ms. Kenda came to the United States for graduate studies in architecture in the 1990s.[5] In August 2000, Ms. Kenda began work as an Assistant Professor at the University of Notre Dame, School of Architecture, in Indiana. Ms. Kenda and Mr. Pleskovic were married in Italy on December 23, 2000. Ms. Kenda continued teaching at Notre Dame. However, in 2001–2002, during academic leave from Notre Dame, she held a senior fellowship from Harvard University, at Dumbarton Oaks in the District of Columbia, before returning to Notre Dame. Ms. Kenda and Mr. Pleskovic never lived together in a marital home.[6] Ms. Kenda and Mr. Pleskovic had one child, A.P.K., (born in August 2001).

Ms. Kenda filed a complaint for divorce in the Superior Court of the District of Columbia, and in May 2002, the court entered judgment of absolute divorce. The court also granted Ms. Kenda sole physical custody of A.P.K. and final decision making responsibility relative to all matters affecting the child's welfare. However, the court gave Ms. Kenda and Mr. Pleskovic joint legal custody. Mr. Pleskovic was awarded parenting rights, which he freely exercised until 2005. In August of 2002, Ms. Kenda took A.P.K. to Indiana. Mr. Pleskovic continued to reside in the District, but visited A.P.K. in Indiana. In July 2005, Mr. Pleskovic went on a three-week trip to Slovenia during his parenting time with A.P.K. Upon A.P.K.'s return to Indiana, Ms. Kenda reported that she began to observe unusual behavior in the child and she feared Mr. Pleskovic was abusing A.P.K.

On October 26, 2005, Ms. Kenda filed a motion in the St. Joseph's County Superior Court in Indiana to modify Mr. Pleskovic's parenting time. Ms. Kenda alleged that

4. Mr. Pleskovic holds a masters degree from Harvard University and a doctorate from M.I.T.

5. Ms. Kenda received a masters degree in architectural design from Cornell University, and a Ph.D. in architecture from the University of Pennsylvania.

6. During her time in the District in 2001–2002, Ms. Kenda first lived in an apartment provided by Mr. Pleskovic, and then in housing for Dumbarton Fellows.

the Indiana court had subject matter jurisdiction over the case because Indiana was A.P.K.'s home-state, and she and A.P.K. had substantial and significant ties to the state. On November 14, 2005, Mr. Pleskovic responded by filing a petition for modification of custody, parenting time, and child support and he requested custody evaluation. He asserted that Ms. Kenda was negatively influencing A.P.K., in addition to preventing him from exercising his parenting rights.

In February 2006, in the midst of the Indiana litigation, Ms. Kenda accepted a position in London and sought to relocate there with A.P.K. She lodged a notice with the Indiana court of her intent to relocate to London. Mr. Pleskovic opposed the relocation of A.P.K. The Indiana court ordered Ms. Kenda not to remove A.P.K. from the country without a court order. Consequently, Ms. Kenda left the child with a family friend when she journeyed to London in August 2006 to assume her new position. When Mr. Pleskovic filed a pleading in the Indiana court to enforce his parenting rights, the Indiana court ordered parenting time for each parent in Indiana, the District of Columbia, London, and Slovenia. Under this order, A.P.K. eventually journeyed to London to be with his mother during her parenting time. As the date approached for Mr. Pleskovic's parenting time, Ms. Kenda sought a stay of the Indiana court order on September 15, 2006, which the Indiana court denied. In response, Ms. Kenda turned to a court in London five days later, and London's High Court of Justice, Family Division, issued an ex parte order prohibiting Mr. Pleskovic from enforcing the Indiana edict. Mr. Pleskovic submitted an emergency pleading to the Indiana court for change of custody, and that court awarded him temporary legal and physical custody of A.P.K., with parenting time for Ms. Kenda.

Under the Indiana court's edict, Ms. Kenda was required to turn A.P.K. over to Mr. Pleskovic's custody by October 16, 2006. When Ms. Kenda failed to comply with the deadline, Mr. Pleskovic informed the London court of Ms. Kenda's violation of the Indiana order. Subsequently, Mr. Pleskovic and Ms. Kenda worked out an agreement with the London court under which Ms. Kenda would return to Indiana with A.P.K. in November 2006, and the London court recognized " 'that all matters relating to the welfare of the child are at present vested in the ... Indiana [court].' " *In re Marriage of Kenda,* 873 N.E.2d 729, 735 (Ind.Ct.App.2007).

On December 20, 2006, following extensive proceedings evaluating the custodial issues, the Indiana trial court issued a comprehensive decision awarding Mr. Pleskovic sole physical custody of A.P.K. and ordering Ms. Kenda to pay Mr. Pleskovic's attorneys' fees, in the amount of $49,165.12. Ms. Kenda unsuccessfully appealed the decision to the Indiana Court of Appeals and the Indiana Supreme Court. *Kenda, supra,* 873 N.E.2d at 729; *see also Kenda v. Pleskovic,* 878 N.E.2d 222 (Ind. 2007) ("Transfer denied.").

The parties' contentious litigation continued as a new chapter unfolded in the District of Columbia. Ms. Kenda relocated to the District on March 10, 2007, and on May 24, 2007, she filed a motion to reaffirm the District's 2002 custody order and to declare the Indiana custody order void as a matter of law; Mr. Pleskovic opposed the motion. Ms. Kenda claimed that the Indiana court lacked subject matter jurisdiction to modify custody because the District retained exclusive, continuing jurisdiction over the custody determination in this case. Later, in June 2007, Ms. Kenda filed a motion for temporary custody and support, and a motion to modify the Indiana custody order, in the event the

Superior Court did not consider it void *ab initio*. In addition, Ms. Kenda sought attorneys' fees from Mr. Pleskovic. Mr. Pleskovic also filed a June 2007 motion for modification of the Indiana custody order, and opposed Ms. Kenda's motions. Ms. Kenda lodged an opposition to Mr. Pleskovic's motion and sought court-ordered psychological evaluations for both parties and for A.P.K. The parties engaged in discovery and filed numerous pleadings between July 2007 and April 2008.

The Superior Court entered an order on April 25, 2008, denying Ms. Kenda's motion to reaffirm its 2002 custody order, but granted her alternative motion to modify the Indiana order. In another order, docketed on July 2, 2008, the Superior Court granted Mr. Pleskovic's request to file the Indiana custody order as a foreign judgment, as well as that court's judgment against Ms. Kenda awarding Mr. Pleskovic $49,165.12 in attorneys' fees.

Following additional motions and discovery, the trial judge held a hearing (concerning custody) over five days between October 21 and December 11, 2008, during which Ms. Kenda and Mr. Pleskovic testified, as well as experts for each party (a pediatrician for Ms. Kenda and A.P.K.'s clinical psychologist for Mr. Pleskovic). Closing arguments took place on March 20, 2009. On July 30, 2009, the trial judge entered a cogent memorandum opinion and order awarding Ms. Kenda and Mr. Pleskovic joint physical and legal custody of A.P.K., with a specific time-sharing schedule, details about the transfer of A.P.K. from one parent to the other, and final decision-making authority relating to certain issues.

Ms. Kenda filed a motion on August 31, 2009, requesting "an award of attorneys' fees and costs that the court deems proper and just." She alleged that she "has been charged approximately $300,000.00 for her attorneys' fees and costs in relationship to her custody case" and "ha[d] already paid approximately $84,000.00 for her attorneys' fees and costs." Prior to that motion, her attorneys (who subsequently withdrew from the case) had filed a post-trial motion for attorneys' fees and costs, in the amount of $193,880.76; detailed billing statements and an affidavit accompanied the motion. The court denied Ms. Kenda's request for attorneys' fees in a reasoned order, docketed on September 1, 2009. While recognizing the skills, experience and diligence of the law firm seeking fees and costs, the trial judge noted, in part, that (1) the firm did not enter the case until February 13, 2008, when the parties already had agreed to a 2007 negotiated "50/50 split of time sharing with [A.P.K.]"; (2) Ms. Kenda did not pay child support to Mr. Pleskovic from May 2007 to September 2007; (3) Ms. Kenda had an "inflated view of [Mr. Pleskovic's] financial status"; and (4) Ms. Kenda failed to pay legal fees and costs to Mr. Pleskovic, totaling $49,165.12, as ordered by the Indiana trial court.

Ms. Kenda now appeals the Superior Court's denial of her motion to reaffirm the 2002 custody order and her motion for attorneys' fees.

## ANALYSIS

Ms. Kenda contends that "the Indiana court lacked jurisdiction to modify the prior custody order of 2002 issued by the [Superior Court]."[7] She argues that "the

---

**7.** It is not entirely clear what Ms. Kenda hopes to accomplish by attacking the jurisdiction of the Indiana court. In her brief, she acknowledges, "Mother is not seeking to re- verse [the] Indiana custody order because the custody has already been modified on July 31, 2009 by the DC Trial Court." It seems likely that her principal goal is to set aside the

Indiana court had an obligation to verify that it had jurisdiction before addressing the custody issue [and] [h]ad the Indiana court done so, it would have learned that the [Superior Court] had exclusive[,] continuing jurisdiction over its order because [Mr. Pleskovic] continued to reside in the [District]." Mr. Pleskovic relies on the Indiana decision in *Kenda, supra,* which determined that Ms. Kenda waived the issue of the Indiana court's authority to modify the District's custody decision but that, notwithstanding Ms. Kenda's waiver, the Indiana court had "the authority to modify the custody arrangement under the [Uniform Child Custody Jurisdiction Act]." *Kenda,* 873 N.E.2d at 736. Mr. Pleskovic also supports the Superior Court's assertion that "[the] appropriate appellate court has spoken, i.e., the Court of Appeals of Indiana has considered [Ms. Kenda's] legal argument herein and found it to be of no merit."

█ We are guided by the following legal doctrines and principles. "Subject matter jurisdiction is a question of law, which we review *de novo.*" *Upson v. Wallace,* 3 A.3d 1148, 1154 (D.C.2010) (citation omitted). Judicial estoppel is a subcategory of "[t]he broader doctrine of 'equitable estoppel.'" *Porter Novelli, Inc. v. Bender,* 817 A.2d 185, 188 (D.C.2003). Judicial estoppel occurs when a party "switche[s] legal positions in two related judicial proceedings, taking one side of an issue at trial and saying the opposite on appeal." *Id.* (citing *Plough, Inc., v. National Acad. of Scis.,* 530 A.2d 1152, 1159 n. 10 (D.C. 1987)). "The purpose of applying this [judicial estoppel] doctrine is 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing

positions according to the exigencies of the moment.'" *Mason v. United States,* 956 A.2d 63, 66 (D.C.2008) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The Supreme Court did not "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," *New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808; however, two factors enunciated by the Court are: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; and (2) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808 (citations omitted).

█ We conclude that judicial estoppel clearly is warranted in this case. Therefore, we hold that Ms. Kenda is judicially estopped from asserting that the Indiana court lacked jurisdiction over the issue of A.P.K.'s custody. Both Ms. Kenda and Mr. Pleskovic voluntarily availed themselves of Indiana's jurisdiction, engaged in substantial litigation, and resolved their London litigation by agreeing "that all matters are at present vested in the . . . Indiana [court]." Below, we explain why Ms. Kenda is estopped from arguing that the Indiana decision modifying custody is *void ab initio.*

The District's UCCJEA took effect in April 2001; it supplanted the District of Columbia Uniform Child–Custody Jurisdiction Act ("UCCJA").[8] The Council of the District of Columbia enacted the UCCJEA because Congress had approved the Parental Kidnapping Act (PKPA) in 1980, 28 U.S.C. § 1738A, due to conflicting state judicial decisions regarding jurisdiction

---

Indiana order awarding attorneys' fees to Mr. Pleskovic.

8. The District's UCCJEA, as was its UCCJA, is based on a uniform act promulgated by the National Conference of Commissioners on Uniform State Laws ("NCCUSL").

over child-custody determinations. In essence, the PKPA mandated that jurisdictional priority and full faith and credit be given only to those state custody determinations issued by a "home state" (as opposed, for example, to a state that had "significant connection" to the disputing parties). *See* 28 U.S.C. § 1738A (a), (c)(1) and 2(A); COUNCIL OF THE DISTRICT OF COLUMBIA. COMMITTEE ON THE JUDICIARY, Report on Bill 13–608; the Uniform Child–Custody Jurisdiction and Enforcement Act of 2000, November 30, 2000, at 2–3; *In re J.R.*, 33 A.3d 397, 400 (D.C.2011) ("the intent of the statute was to avoid conflicting orders in two different jurisdictions") (internal quotation marks omitted).

Consistent with the UCCJEA, the Superior Court exercised "home state" jurisdiction and made an initial child-custody determination in May 2002; Ms. Kenda, Mr. Pleskovic, and A.P.K. all resided in the District of Columbia at that time.[9] Having made the initial custody determination as the home state of A.P.K., the District ac-

quired "exclusive, continuing jurisdiction over the determination" until certain events took place.[10]

When Ms. Kenda approached the Indiana court in 2005, she did not seek a custody determination, or a modification of the District's initial child-custody determination. Rather, she filed "a motion to modify non-custodial parenting time." *Kenda, supra,* 873 N.E.2d at 732. However, in her *pro se* verified motion, she alleged that:

> [Indiana] has jurisdiction to grant the requested relief pursuant to [its] Uniform Child Custody Jurisdiction Law, codified in Indiana at Ind.Code 31–17–3, *et seq.,* because Indiana is the "home state" of the subject child, and because the child and his mother have significant connection to Indiana and there is available in Indiana substantial evidence concerning the child's present and future care, protection, training and personal relationships.

9. D.C.Code § 16–4601.01(8) (2001) provides in pertinent part:
> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding.

*See also* D.C.Code § 16–4602.01 which states, in part:
> (a) Except as otherwise provided in section 16–4602.04 [temporary emergency jurisdiction], a court of the District has jurisdiction to make an initial child-custody determination only if:
> (1) The District is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from the District, but a parent or person acting as a parent continues to live in the District;

10. D.C.Code § 16–4602.02 provides:
> (a) Except as otherwise provided in section 16–4602.04, a court of the District which has made a child-custody determination

consistent with sections 16–4602.01 or 16–4602.03 has exclusive, continuing jurisdiction over the determination until:
> (1) A court of the District determines that neither the child, nor the child and one parent, nor the child and any person acting as a parent have a significant connection with the District and that substantial evidence is no longer available in the District concerning the child's care, protection, training, and personal relationships; or
> (2) A court of the District or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the District.
> (b) A court of the District which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 16–4602.01.

Mr. Pleskovic responded with a "petition for modification of custody, parenting time and child support and request for custody evaluation." *Kenda, supra,* 873 N.E.2d at 732. Subsequently, both Ms. Kenda and Mr. Pleskovic continued to lodge pleadings and petitions with the Indiana court, including Mr. Pleskovic's petition to preclude Ms. Kenda from taking A.P.K. with her to London, Ms. Kenda's emergency petition to stay Mr. Pleskovic's parenting time, and Mr. Pleskovic's emergency petition for change of custody. Furthermore, in the midst of the Indiana litigation, Ms. Kenda and Mr. Pleskovic resolved their London litigation by agreeing "that all matters relating to the welfare of [A.P.K.] are at present vested in the [Indiana trial court]." *Id.* at 735.

Undoubtedly because both parents availed themselves of Indiana's jurisdiction and spent a substantial amount of time litigating there, the Indiana court proceeded to determine whether the District's child-custody and parenting time orders should be modified under the Indiana Code. At the time, Ind.Code § 31–17–3–3(a)(1) (2006) specified that the Indiana court had authority to

> make a child custody determination by initial or modification decree if: (1) this

state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state. . . .

The Indiana trial court issued a comprehensive order in December 2006.

Only after receiving the Indiana trial court's decision awarding Mr. Pleskovic sole legal and primary physical custody did Ms. Kenda raise a jurisdictional issue based on the District's initial child-custody determination under the UCCJEA.[11] Given the peculiar circumstances of this case, as set forth above, we hold that Ms. Kenda is judicially estopped from challenging the Indiana court's jurisdiction because she availed herself of that jurisdiction, did not protest the Indiana jurisdiction when Mr. Pleskovic sought custody of A.P.K., and formally agreed in resolving her London litigation that Indiana then had jurisdiction over "all matters relating to the welfare of [A.P.K.]." Having agreed to Indiana's jurisdiction, and having informed the Lon-

**11.** Indiana did not adopt the substance of the UCCJEA until July 2007. *See* Ind. P.L. 138–2007, July 1, 2007. Nevertheless, prior to that time, Indiana law required the trial court to determine whether it had jurisdiction before making a custody determination. *See Christensen v. Christensen,* 752 N.E.2d 179, 181–82 (Ind.Ct.App.2001) ("Under the UCJA, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute."). Moreover, the Comment to § 202 of the UCCJEA as promulgated by the NCCUSL states, in part:

> [E]ven if the child has acquired a new home State, the original decree State retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial

connection" jurisdiction provisions of Section 201 are met. . . .

> The use of the phrase "a court of this State" under subsection (a)(1) makes it clear that the original decree State is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction. . . .
>
> Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State.

UCCJEA Text and Comments, *Comment to Section 202* (Exclusive, Continuing Jurisdiction).

don court that jurisdiction rested with the Indiana court, Ms. Kenda may not now, out of self interest, take the opposite view in this court. To allow her to do so would leave the integrity of the judicial system unprotected because of an " 'exigenc[y] of the moment.' " *Mason, supra,* 956 A.2d at 66 (citing *New Hampshire,* 532 U.S. at 749–50, 121 S.Ct. 1808).

### Ms. Kenda's Request for Attorneys' Fees

 We review a trial court's decision to deny a request for attorneys' fees for abuse of discretion. *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986). In a custody dispute, "[a] trial court 'is authorized to grant attorney's fees where the court finds that counsel was necessary to protect the interests of the [child].' " *Maybin v. Stewart,* 885 A.2d 284, 288 (D.C. 2005) (quoting *Prost v. Greene,* 675 A.2d 471, 474 (D.C.1996) (internal quotations and citation omitted)). "Thus, when counsel is required by the party in whose custody the court has deemed to have been in the child's best interests, attorney's fees may be granted to that party in defending such grant." *Id.* (internal quotations and citations omitted).

 Section 312 of the UCCJEA, D.C.Code § 16–4603.12 (2001), authorizes the trial court to "award the prevailing party ... necessary and reasonable expenses ..., including costs ... [and] attorney's fees...." Ms. Kenda initially requested "an award of costs that the court deems proper and just," and she alleged that out of $300,000.00 of attorneys' fees charged to her, she had paid about $84,000.00. One of the law firms that had represented Ms. Kenda requested $193,000.00 in attorney's fees. The trial court determined that the fees sought by this firm were related to work performed *after* the parties reached an agreement to share custody of A.P.K. Further, the court

found that the attorneys who contributed the most to A.P.K.'s best interest were the *guardians ad litem,* who ultimately recommended that the court award the parties joint-custody. The court also noted that the Indiana court's judgment awarded more than $49,000.00 in attorney's fees to Mr. Pleskovic which, at the time, had not been satisfied; and that Mr. Pleskovic was not nearly as financially well-off as Ms. Kenda apparently believed. Accordingly, the court determined that it would be unfair for Mr. Pleskovic to pay Ms. Kenda's legal fees.

We conclude that the trial court properly exercised its discretion in denying Ms. Kenda's request. *See Johnson v. United States,* 398 A.2d 354, 362 (D.C.1979). The trial court determined that A.P.K.'s best interests were served by the court appointed *guardians ad litem,* that both parties suffered financial losses in the dispute, and that forcing Mr. Pleskovic to pay Ms. Kenda's fees would be unfair. In short, we see no abuse of discretion and no reason to disturb this finding. *See Fritz v. Grise,* 797 A.2d 710, 715 (D.C.2002) (determining that there was no abuse of discretion relating to the trial court's decision not to award attorney's fees under a section of the UCCJA).

Accordingly, for the foregoing reasons, we affirm the trial court's judgments.

*So ordered.*