# District of Columbia
# Court of Appeals

No. 15-FM-180

IN RE KAREN PERRY,

Appellant.



MRE-21-03

On Appeal from the Superior Court
of the District of Columbia

BEFORE: WASHINGTON, *Chief Judge*; and EASTERLY, and MCLEESE, *Associate Judges*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the reviewing judge's order affirming the magistrate judge's order is vacated, and the case is remanded for further proceedings.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: January 12, 2017.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 15-FM-180

IN RE KAREN PERRY, APPELLANT.

FILED 1/12/17
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court of the District of Columbia
Family Division
(MRE-21-03)

(Hon. Aida L. Melendez, Magistrate Judge)
(Hon. Carol Ann Dalton, Reviewing Judge)

(Argued October 11, 2016                    Decided January 12, 2017)

*Pierre E. Bergeron* for appellant.

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee District of Columbia.

*Charles H. Fitzpatrick*, guardian ad litem for appellant, filed a statement adopting appellee's brief.

Before WASHINGTON, *Chief Judge*, and EASTERLY and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:    In 2004, appellant Karen Perry was involuntarily committed to a residential facility under the Citizens with Intellectual Disabilities Act, D.C. Code § 7-1301 et seq. (2012 Repl. & 2016 Supp.), on the grounds that she had a moderate intellectual disability and needed assistance to

develop necessary life skills. In 2012, the District of Columbia Department on Disability Services moved to have Ms. Perry's involuntary commitment lifted, contending that Ms. Perry had only a mild intellectual disability and thus could no longer properly be involuntarily committed. Through court-appointed counsel, Ms. Perry opposed the lifting of her involuntary commitment, arguing that commitment was necessary to ensure that Ms. Perry did not have the option to leave her residential facility and thus lose access to necessary services. The magistrate judge denied Ms. Perry's requests for an evidentiary hearing and for funds to obtain an expert to assist Ms. Perry's counsel. Taking into account both recent and prior evaluations of Ms. Perry, the magistrate judge concluded that there was a reasonable doubt as to whether Ms. Perry was moderately intellectually disabled. The magistrate judge therefore terminated Ms. Perry's involuntary commitment. In this court, Ms. Perry argues, among other things, that she should have been granted an evidentiary hearing and the assistance of an expert in connection with that hearing. We agree that Ms. Perry should have been afforded an evidentiary hearing. We therefore vacate the judgment and remand the case for further proceedings.

## I. Facts and Procedural Background

Ms. Perry was involuntarily committed to a residential facility pursuant to D.C. Code § 7-1303.04, which authorizes such commitment only if the individual being committed has at least a moderate intellectual disability. To have a moderate intellectual disability, a person must be at least moderately impaired both cognitively and adaptively. D.C. Code § 7-1301.03 (2). The court reviewed Ms. Perry's commitment annually, as required under D.C. Code § 7-1304.11, and Ms. Perry was evaluated in connection with those reviews. Although a number of those evaluations indicated that Ms. Perry's cognitive functioning was moderately impaired, some evaluations indicated that Ms. Perry's cognitive functioning was instead mildly impaired. Through 2009, the trial court determined that Ms. Perry was moderately intellectually disabled. In 2010, 2011, and 2012, the trial court found that Ms. Perry was mildly cognitively impaired and moderately adaptively impaired, but continued her commitment nonetheless.

In 2012, the Department on Disability Services moved to have Ms. Perry's involuntary commitment terminated, arguing that Ms. Perry was only mildly cognitively impaired. In response, the magistrate judge ordered the District to arrange for a new psychological evaluation of Ms. Perry. That evaluation was

conducted by Dr. William H. Byrd, who diagnosed Ms. Perry as being mildly cognitively impaired and moderately adaptively impaired.

Ms. Perry filed a motion for an independent psychological evaluation, pursuant to D.C. Code § 7-1304.04, arguing that Dr. Byrd's examination did not provide an adequate assessment of Ms. Perry's cognitive functioning. The magistrate judge granted that request and appointed a guardian ad litem (GAL) to select a psychologist to perform an independent evaluation of Ms. Perry's level of intellectual disability. A dispute arose in the trial court about the extent of the District's involvement in the selection of the independent evaluator.

In July 2014, the GAL submitted the report of the evaluator, Dr. Brenda Fawcett, along with his own recommendations.[1] Although Ms. Perry's full-scale IQ score placed her in the range of moderate cognitive impairment, Dr. Fawcett

---

[1] The trial court initially appointed the GAL for the limited purpose of selecting an independent evaluator. The GAL subsequently participated more broadly, both in the trial court and in this court. The trial court appears to have appointed the GAL as a neutral aid to the court, rather than as an advocate charged with determining Ms. Perry's wishes and seeking to advance those wishes. *See generally In re J.J.Z.*, 630 A.2d 186, 192 n.10 (D.C. 1993) (comparing differing roles played by GALs appointed as advocates and GALs appointed as neutral factfinders); *S.S. v. D.M.*, 597 A.2d 870, 876-77 (D.C. 1991) (discussing differing roles played by GALs in various settings). On remand, the magistrate judge may wish to clarify both the scope and the nature of the GAL's role in this case.

viewed that score as "a statistical anomaly" and concluded that Ms. Perry's test scores as a whole placed Ms. Perry in the range of mild intellectual disability, both cognitively and adaptively. The GAL recommended that Ms. Perry's commitment be terminated based on Dr. Fawcett's diagnosis.

Ms. Perry contested Dr. Fawcett's findings. Ms. Perry also requested both an evidentiary hearing and the appointment of a psychologist, chosen by Ms. Perry's counsel, to either conduct a further examination or provide a written report based on existing data, and to assist counsel in connection with the evidentiary hearing. After denying Ms. Perry's requests for an expert and for an evidentiary hearing, the magistrate judge terminated Ms. Perry's involuntary commitment. Ms. Perry filed a motion with the Superior Court seeking review of the magistrate judge's order. The reviewing judge affirmed.

## II. Discussion

On appeal, "we review the magistrate judge's factual findings . . . for abuse of discretion or a clear lack of evidentiary support." *In re C.L.O.*, 41 A.3d 502, 510 (D.C. 2012) (internal quotation marks omitted). We review alleged errors of law de novo. *Id.*

## A. Ms. Perry's Request for an Evidentiary Hearing

We turn first to Ms. Perry's argument that the magistrate judge erred by failing to conduct an evidentiary hearing. We agree.

Under the Citizens with Intellectual Disabilities Act, the court must conduct annual hearings to review the involuntary commitment of an intellectually disabled person. D.C. Code § 7-1304.11 (a). Although involuntary-commitment hearings may be informal, respondents at such hearings have the right to be present, to testify, to call witnesses and present evidence, and to cross-examine opposing witnesses. D.C. Code § 7-1304.06. The District suggested at oral argument that these procedural protections apply only to initial commitment hearings, not to subsequent annual reviews. We conclude to the contrary. Section 7-1304.06 is not explicitly limited to initial commitment hearings. Rather, Section 7-1304.06 provides a right to present evidence and to cross-examine witnesses at "hearings" generally. Moreover, the right to an evidentiary hearing extends to "respondents," a term that includes a "person whose . . . continued commitment is being sought in any proceeding under [Chapter 13 of Title 7 of the D.C. Code]." D.C. Code § 7-1301.03 (24). Section 7-1304.06 thus provides a right to an evidentiary hearing

when continued involuntary commitment on the basis of intellectual disability is at issue. Although this case is in an unusual posture because Ms. Perry seeks her own continued commitment, Ms. Perry nevertheless is a respondent entitled to the protections of Section 7-1304.06, because her "continued commitment is being sought." We therefore conclude that Ms. Perry had a statutory right to an evidentiary hearing, at least upon proper request. *Cf.* D.C. Code §§ 7-1303.09 (a), .10 (b) (where District seeks to transfer committed person to less restrictive facility or to discharge committed person from residential care, committed person has right to evidentiary hearing upon request).

The District argues that although Ms. Perry requested an evidentiary hearing, she always tied that request to her request for the assistance of an expert. Thus, the District argues, if the magistrate judge correctly denied Ms. Perry's request for the assistance of an expert, then Ms. Perry's request for an evidentiary hearing was also properly denied. It is true that Ms. Perry often linked her requests for an evidentiary hearing and her requests for the assistance of an expert. Ms. Perry indicated several times in the trial court, however, that she wanted an evidentiary hearing at least in part in order to cross-examine the experts relied upon by the District. Moreover, the magistrate judge did not deny Ms. Perry's request for an evidentiary hearing on the ground that that request was dependent on

Ms. Perry's request for expert assistance. Rather, the magistrate judge denied the request on the ground that an evidentiary hearing was "not required where the most recent psychological evaluation meets accepted professional standards, shows the exercise of sound professional judgment, and is consistent with previous findings."[2] In upholding the magistrate judge's ruling, the reviewing judge stated that there was not "any statutory authority for an evidentiary hearing in the instant case." Because Ms. Perry adequately indicated that she was requesting an evidentiary hearing in part in order to confront the experts relied upon by the District, and because the trial court denied Ms. Perry's request on the merits, we conclude that Ms. Perry preserved an independent claim to an evidentiary hearing.

Ms. Perry reasonably sought an evidentiary hearing in this case to cross-examine the experts relied upon by the District and to dispute the proper weight to be given to the most recent psychological evaluation. For the foregoing reasons, we hold that Ms. Perry was entitled to such an evidentiary hearing. Although the District suggests that the failure to afford Ms. Perry such a hearing was harmless,

---

[2] In denying Ms. Perry's request for an evidentiary hearing, the magistrate judge appeared to rely on D.C. Code § 7-1304.04. Section 7-1304.04, however, states the standard applicable to requests for an independent comprehensive evaluation of a respondent. It does not address a respondent's right to an evidentiary hearing.

we are not confident on the current record that affording Ms. Perry an evidentiary hearing would not have affected the outcome of the review proceeding. *See, e.g.*, *In re Ty.B.*, 878 A.2d 1255, 1267 (D.C. 2005) ("We must determine whether the error was *sufficiently insignificant* to give us *fair assurance* that the judgment was not substantially swayed by it.") (brackets and internal quotation marks omitted). We therefore vacate the judgment and remand the case for the trial court to hold an evidentiary hearing.[3] *Cf. White v. United States*, 146 A.3d 101 (D.C. 2016) (vacating judgment and remanding case on ground that trial court failed to conduct necessary evidentiary hearing).

---

[3] Ms. Perry also raises several challenges to the magistrate judge's finding that there was a reasonable doubt as to whether Ms. Perry was moderately intellectually disabled. Most broadly, Ms. Perry argues that the evidence compelled the magistrate judge to find beyond a reasonable doubt that Ms. Perry was at least moderately intellectually impaired. Ms. Perry therefore requests that we remand the case with instructions that Ms. Perry's involuntary commitment be continued. We agree with the reviewing judge, however, that the current record permitted the magistrate judge to have a reasonable doubt as to whether Ms. Perry was moderately intellectually disabled. *Cf., e.g.*, *Davis v. United States*, 564 A.2d 31, 35 (D.C. 1989) ("[W]here the facts admit of more than one interpretation, the appellate court must defer to the trial court's judgment."). Because the magistrate judge will address the issue of the degree of Ms. Perry's intellectual disability again on a different record after the evidentiary hearing, we do not address Ms. Perry's other specific challenges at this point.

### B. Ms. Perry's Request for Expert Assistance

We also address Ms. Perry's claim that the magistrate judge erred by failing to provide Ms. Perry with expert assistance in connection with the review hearing. We conclude that the magistrate judge should further address that issue on remand.

Relying on the Criminal Justice Act, D.C. Code § 11-2601 et seq. (2012 Repl.) and the Citizens with Intellectual Disabilities Act, Ms. Perry asked the magistrate judge to approve the expenditure of public funds so that Ms. Perry could obtain an expert who would assist her in connection with the review proceeding. The magistrate judge denied that request, concluding that the Criminal Justice Act was inapplicable, because the Act is "a criminal statute pertaining to representation of indigents in criminal cases" and because the Act specifies that counsel may only obtain expert services at public expense "if necessary for an adequate defense." D.C. Code § 11-2605 (a)-(b). The reviewing judge also concluded that the Criminal Justice Act was inapplicable.

Interpreting the applicable provisions of law de novo, *In re C.L.O.*, 41 A.3d at 510, we hold that the trial court has discretionary authority to provide an expert, at public expense, to assist counsel representing an indigent person who is

intellectually disabled and whose continued involuntary commitment is at issue in a review proceeding.

Involuntary commitment proceedings are not criminal in character. *See In re Amey*, 40 A.3d 902, 915 (D.C. 2012). One therefore would not leap immediately to the conclusion that a provision in the Criminal Justice Act would apply to such proceedings. In a case involving involuntary civil commitment on the ground of mental illness, however, this court long ago held that "[a] respondent in a civil commitment case is certainly entitled to the services of a psychiatric expert upon a showing of financial inability to obtain the expert and a demonstration that the service is 'necessary [for] an adequate defense.'" *In re Morrow*, 463 A.2d 689, 692 (D.C. 1983) (quoting D.C. Code § 11-2605 (a) (1981) (Criminal Justice Act provision that authorizes courts to approve payment of expert for services necessary for adequate defense)). Perhaps for that reason, the Superior Court Rules for Mental Retardation Proceedings contemplate that appointed attorneys will submit vouchers for payment under the Criminal Justice Act. Super. Ct. Ment. Ret. R. 2 (a).

On the other hand, the Citizens with Intellectual Disabilities Act contains its own provisions authorizing the appointment of counsel and the payment of

expenses, including expenses associated with experts designated by the court. D.C. Code §§ 7-1304.02, .12; *see also* Super. Ct. Ment. Ret. R. 11 (b) (indicating that counsel in mental-disability proceedings shall be appointed "pursuant to D.C. Code § 7-1304.02" and "paid in accordance with Criminal Justice Act criteria established by the Court").

Both the Criminal Justice Act and the Citizens with Intellectual Disabilities Act grant trial courts discretionary authority to provide expert assistance, at public expense, to indigent litigants. Although the Criminal Justice Act uses the term "necessary," we have interpreted the Act to require the trial court to assess requests for such assistance "on a standard of reasonableness." *Jackson v. United States*, 768 A.2d 580, 587 (D.C. 2001) (internal quotation marks omitted). Because we see no material difference between the scope of the trial court's discretion to provide expert assistance under the Criminal Justice Act and the scope of that discretion under the Citizens with Intellectual Disabilities Act, we need not and do not decide in this case the precise source of the trial court's authority. Rather, we hold only that the trial court has discretionary authority to provide expert assistance, at public expense, to indigent respondents with intellectual disabilities whose involuntary commitment is at issue.

The magistrate judge's order arguably suggests that the magistrate judge in any event would not have been inclined to provide Ms. Perry with an expert. The magistrate judge's exercise of discretion on remand might be affected, however, by our holding that Ms. Perry is entitled to an evidentiary hearing. On remand, the magistrate judge therefore should consider anew any request by Ms. Perry for the assistance of an expert in connection with that evidentiary hearing.

We note that the question whether the magistrate judge should provide Ms. Perry with expert assistance is distinct from the question whether the magistrate judge erred in its handling of the most recent independent comprehensive evaluation conducted pursuant to D.C. Code § 7-1304.04. *Cf. Williams v. United States*, 310 A.2d 244, 247 n.4 (D.C. 1973) (noting distinction between appointment of expert to assist court and appointment of expert to assist litigant). Ms. Perry claims that the evaluation was not independent, because the District in effect selected the psychologist who performed the evaluation. The District disputes that claim. Because the evidentiary hearing may shed light on this factual dispute, we leave the matter to be further addressed on remand.

For the foregoing reasons, we vacate the reviewing judge's order affirming the magistrate judge's order and remand the case for further proceedings.

*So ordered.*