*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-669

MARIO J. SEGRETI, APPELLANT,

v.

LUKE DEIULIIS, *et al.*, APPELLEES.

FILED 09/13/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-4255-04)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued January 16, 2018                    Decided September 13, 2018)

*Michael B. McGovern* for appellant.

Appellee Luke DeIuliis filed a statement in lieu of brief supporting the April 19, 2016, decision of the trial court.

Appellee Antoinette Witt filed a statement in lieu of brief supporting the April 19, 2016, decision of the trial court.

Before GLICKMAN and FISHER, *Associate Judges*, and FERREN, *Senior Judge*.

FISHER, *Associate Judge*: Appellant Mario Segreti sought attorney's fees after prevailing in three actions concerning his rights as a tenant. The Superior Court denied his motion. We affirm.

## I. Background

Appellant moved in with his grandmother, Marguerite Corsetti, in 1990. Before she died, Corsetti deeded the house to an *inter vivos* trust, and shortly after her death in 2004, the trustees attempted to remove appellant from the property so they could sell it. Determined not to treat appellant as a tenant, which, as their lawyer explained, they feared would confer on him "all kinds of special rights," the trustees declined to seek a judicial eviction and instead sent appellant a letter demanding that he vacate. When he refused, they told the companies that provided electricity and water to the Corsetti house that a squatter lived on the property—an assertion that led the companies to shut off services.

That act launched the protracted legal battle that gives rise to this case—a procedural history we summarized in a prior memorandum opinion and judgment ("MOJ") concerning the merits of that litigation. *See Corsetti Trust v. Segreti*, Nos. 10-CV-1021, -1039, -529, 11-CV-1111 & 12-AA-1656, Mem. Op. & J. at 2 (D.C. Sept. 30, 2014). First, in May 2004, appellant filed a complaint in the Superior Court ("the civil case") seeking preliminary and permanent injunctions restoring his utilities and enjoining co-trustee Luke DeIuliis from interfering with his lawful use of the property. DeIuliis responded with an answer and a six-count

counterclaim. Second, appellant filed a petition with the Rental Accommodations and Conversion Division of the Department of Consumer and Regulatory Affairs ("the administrative action"), that alleged, among other things, that the trust cut off his utility services for retaliatory purposes. Finally, in November 2008, the trust decided to switch tactics and filed a complaint for possession in the Landlord-Tenant Branch of the Superior Court (the "landlord-tenant case").

Appellant prevailed in all three of these actions and, except for one issue not relevant here, we affirmed each decision on appeal.[1] After those appeals, he filed a renewed motion for attorney's fees and costs in all three cases, as the Superior Court had held a similar motion in abeyance pending our review of the trial court and agency decisions. The Superior Court awarded appellant costs but denied his claim for fees. After the court denied his motion for reconsideration, he filed this appeal, contesting the court's denial of fees. Neither the trust nor its trustees filed a brief as appellee, resting instead on the Superior Court order.

## II. Analysis

---

[1] Appellant also initiated an action in the Probate Division, contesting Corsetti's will and claiming title to the property. However, the trustees won that round of litigation and, consequently, appellant does not seek compensation for the attorney's fees associated with it.

The American Rule generally renders each party responsible for its own fees for legal services. *Assidon v. Abboushi*, 16 A.3d 939, 942 (D.C. 2011). However, that rule admits of exceptions and appellant contends that two of them apply here. He first argues that, under D.C. Code § 42-3509.02 (2012 Repl.), he was entitled to attorney's fees for services rendered in the civil and administrative cases. Second, appellant invokes the common law "bad faith" exception to argue for additional fees, primarily those amassed in the landlord-tenant case. We consider appellant's claim for fees in each case in turn.

## A. Claim for Fees in the Civil Case

D.C. Code § 42-3509.02 authorizes courts to "award reasonable attorney's fees to the prevailing party in any action under this chapter, except actions for eviction authorized under § 42-3505.01." While appellant prevailed on his complaint and on the counterclaims in the civil case, his success makes him eligible for fees only if those claims arose "under this chapter," that is, chapter 35 of title 42 of the District of Columbia Code—the Rental Housing Act ("the Act" or the "RHA"). Thus, in order to decide whether the trial court should have awarded appellant statutory fees, we must determine, as a threshold matter, whether the

complaint or the counterclaims arose under the Act, a question of statutory construction that we consider de novo. *See Twyman v. Johnson*, 655 A.2d 850, 855 (D.C. 1995) (whether tenant can assert cause of action under RHA is an issue of "pure[]. . . statutory construction").

## 1. The Complaint

### a.

In his complaint, appellant alleged that DeIuliis arranged the utilities shut-off in order to evict him "by means of self-help." For forty years, this court has held that such conduct is unlawful and that tenants can contest it in Superior Court. *Mendes v. Johnson*, 389 A.2d 781, 787 (D.C. 1978) (en banc), *abrogated in part on other grounds by Davis v. Moore*, 772 A.2d 204, 230 (D.C. 2001) (en banc). However, the remedy we have recognized—a suit for wrongful eviction—arises under common law, not the RHA. *See id.* (stating that a self-help eviction "gives rise to a cause of action in tort"); *see also Young v. District of Columbia*, 752 A.2d 138, 144 (D.C. 2000) (housing provider may "be liable in tort for wrongful eviction"). Accordingly, we have never authorized § 42-3509.02 attorney's fees to parties simply because they prevailed on a wrongful eviction count. Instead, where

we have upheld an award of fees to such claimants, we have relied on other exceptions to the American Rule, such as the one for bad faith in litigation. *See, e.g.*, *Oliver v. Mustafa*, 929 A.2d 873, 878, 879–80 (D.C. 2007).

We disagree with appellant's assertion that D.C. Code § 42-3505.01 provides an additional cause of action for challenging a self-help eviction. That RHA provision primarily enumerates the lawful bases for evicting a tenant and establishes notice requirements; it does not contain an express, blanket prohibition on regaining possession through nonjudicial means. The closest it comes is subsection (f), which establishes comprehensive procedures for evictions initiated in order to renovate or alter the rented property. *See* D.C. Code § 42-3505.01 (f)(1)–(5). To the extent that provision bars self-help, it does so only in the limited context in which it applies—evictions pursued "for the immediate purpose of making alterations or renovations." *See* § 42-3505.01 (f)(1). Subsection (f) does not establish a general prohibition on self-help and also does not apply here, as appellant does not allege that the trustees sought to evict him in order to renovate the house in which he resided.

Even if one could read § 42-3505.01 to ban self-help evictions implicitly, this court has heretofore not done so. When we first announced the prohibition on

self-help evictions of residential tenants, we did not cite the RHA, *see Mendes*, 389 A.2d at 786 & n.12, even though the version of the statute in effect at the time contained a provision analogous to § 42-3505.01, *see* D.C. Code § 45-1653 (a) (1978 Supp.).  Instead, we relied primarily on other landlord-tenant statutes—specifically D.C. Code §§ 16-1124, -1501, and 45-905 (now § 42-3210)—which establish summary proceedings for evictions and, which we held, implicitly ban landlords from regaining possession by nonjudicial means.  *Mendes*, 389 A.2d at 786 & n.12, 787.

Regardless of whether § 42-3505.01 contains a blanket ban on self-help, it certainly does not establish a new cause of action for challenging such conduct. Nothing in the provision's text expressly or implicitly authorizes tenants to sue whenever their landlords seek to regain possession via nonjudicial means.  Nor does its legislative history provide a basis for inferring an intent to create such a cause of action.  If anything, § 42-3505.01 affirms that when the legislature wishes to establish a cause of action, it knows how to say so.  Subsection (f)—which, as noted, applies only to evictions pursued for purposes of conducting renovations—authorizes plaintiffs to "seek enforcement of any right or provision under *this subsection*."  D.C. Code § 42-3505.01 (f)(6) (emphasis added).  Through the italicized language, the legislature made clear that § 42-3505.01 (f)(6) does not

permit suits for violations of rights expressed or implied by other subsections—a restriction that evinces an intent to limit Superior Court claims based on § 42-3505.01.

To defend his broad interpretation, appellant insisted at oral arguments that the wrongful eviction tort does not provide an adequate remedy for challenging self-help. He argued, first, that a wrongful eviction plaintiff can only seek damages. However, our case law suggests that tenants relying on that cause of action can also pursue an injunction. *See Henson v. Prue*, 810 A.2d 912, 914, 916 (D.C. 2002) (affirming Superior Court decision awarding injunctive and declaratory relief, but not damages, to a wrongful eviction plaintiff). Appellant also contended that tenants without leases cannot raise a wrongful eviction claim under the common law; yet our precedents refute this contention as well. *See Young*, 752 A.2d at 142, 143 (defining a tenancy at sufferance as a month-to-month rental "without a written agreement" and observing that such a tenancy "require[s] court process for termination").

Both of these arguments suffer from a more significant defect: they assume that we have authority to interpret a statute so as to achieve a particular policy outcome. That is not our role. Although this court construes remedial statutes

such as the RHA broadly, we cannot infer a right to sue where neither the text nor the legislative history justifies doing so. *See, e.g.*, *Twyman v. Johnson*, 655 A.2d 850, 856–58 (D.C. 1995) (holding that RHA does not create private damages action for retaliatory eviction). Here, we have no basis for concluding that § 42-3505.01 creates an additional cause of action for challenging self-help evictions in Superior Court; consequently, we hold that it does not.[2]

**b.**

At oral argument, appellant hinted at an alternative basis for recovering under § 42-3509.02. He noted that his wrongful eviction claim turned on whether he qualified as a "tenant," a point he ultimately won when his opponent conceded (after an adverse ruling by the RHC) that he satisfied the RHA's definition of the term. This definitional connection between the Act and his victory, appellant posits, entitles him to statutory fees.

---

[2] Because appellant only argued that his complaint arose under § 42-3505.01, we have no need to address the possibility that another RHA provision might have provided a basis for his claim. Nor does our holding bear on a tenant's right to seek relief for a "substantial[] reduc[tion] . . . [in] services" by filing an administrative action pursuant to D.C. Code § 42-3509.01 (a).

We disagree. As a threshold matter, appellant does not present, much less develop, this argument in his brief. That fact alone would justify ignoring it. *See McFarland v. George Washington Univ.*, 935 A.2d 337, 351 (D.C. 2007). But even if we excused this defect, the contention would still fail on the merits. Section 42-3509.02 does not allow recovery simply because a prevailing party has referenced the Act or used it to strengthen an argument. Rather, that provision specifies that the RHA must provide the cause of action on which the party prevails. Section 42-3509.02 makes this point clear when it states that parties can recoup fees only if they win on an "*action* under this chapter." (Emphasis added.)

Here, appellant did not plead such an action, and the common law claim he did assert in no way depended on the Act generally or its definition of "tenant" in particular. Our post-RHA precedents suggest that a plaintiff who satisfies any definition of "tenant" recognized by law—including ones supplied by the common law or statutes other than the RHA—can assert a wrongful eviction claim.[3] *See,*

---

[3] Although our 2014 memorandum opinion and judgment stated that the RHA definition of tenant "occupies the field," we made this point in the context of analyzing whether appellant's administrative claims arose under that statute such that the Rental Housing Commission had jurisdiction over them. We in no way suggested that the RHA entirely preempted the common law and other landlord tenant statutes, an observation that would have contravened our prior holdings. *See, e.g.*, *Hernandez v. Banks*, 84 A.3d 543, 554 (D.C. 2014) (noting that this court seeks to "reconcile[]" the RHA with other landlord-tenant statutes). More

(continued…)

*e.g.*, *Young*, 752 A.2d at 143 (analyzing whether "landlord-tenant relationship exist[ed]" in wrongful eviction action by citing several definitions of tenant, including one provided by RHA, "factors" established by case law, and definition of estate by sufferance under D.C. Code § 42-520 (then codified as § 45-220)); *Harkins v. Win Corp.*, 771 A.2d 1025, 1027 (D.C.), *amended in part on reh'g*, 777 A.2d 800 (D.C. 2001) (relying on common law definitions to distinguish tenants, who are protected from self-help evictions, from roomers, who are not). That means that satisfying the RHA definition is not an essential element of proving the wrongful eviction tort: while plaintiffs can establish their rights against a self-help eviction by qualifying as an RHA tenant, they can make the same argument by relying on other authorities instead.

Appellant appears to have recognized this fact in the Superior Court proceedings, as he did not litigate his case as if it depended on the Act. His complaint made no reference to the RHA; even when it asserted that he qualified as a "tenant . . . entitled to all protections under District of Columbia law," it did

---

(…continued)
generally, we observe that, contrary to appellant's assertions, our prior decision did not consider the basis for the claims in the civil case, much less hold that they arose under the RHA.

not state which definition he met.[4]  Moreover, while a few of appellant's Superior Court filings cited the RHA definition of tenant, at least one also asserted that he qualified under other definitions of that term.  Memorandum in Support of Motion for Order Lifting Stay, etc. at 2 n.1, 3, *Segreti v. DeIuliis*, CA No. 4255-04 (D.C. Super. Ct. July 23, 2007).

The main link between appellant's complaint and the RHA is DeIuliis's decision, after he had lost the point in an administrative action covered by the RHA, is appellee Deluliis's decision to "prospectively" recognize appellant as a "statutory" tenant and consent to a permanent injunction enjoining future reliance on self-help.  Yet, in admitting that appellant qualified as a statutory tenant, DeIuliis never conceded that the wrongful eviction claim arose under the RHA.  Moreover, DeIuliis's attempt to "get this matter resolved[] and get the Trust back on track" cannot transform an action predicated on the common law into one "under this chapter."  We recognized a similar point in our prior MOJ, when we explained that, by conceding that appellant qualified as a tenant, DeIuliis did "not convert [his] earlier filed" common law counterclaim for mesne profits "into a demand for rent" under the RHA.  For the same reason, DeIuliis's concession also

---

[4]  The quoted clause perhaps could be read as a request for a declaratory judgment that appellant qualifies as a tenant.  However, he has not argued that he sought such relief, or that he prevailed on that claim under the RHA.

did not alter the legal authority on which appellant's "earlier filed" complaint relied.

***

In sum, appellant did not state a claim under D.C. Code § 42-3505.01 nor did his civil complaint otherwise arise under the RHA. Thus, he cannot obtain statutory fees for prevailing on it.

## 2. The Counterclaims

Appellant has also failed to demonstrate that any of DeIuliis's six counterclaims in the civil case arose under the RHA. Three of them—alleging unpaid loans, tortious conversion, and breach of fiduciary duties—clearly do not fall within the purview of that statute. These claims pertained to Mr. Segreti's alleged failure to repay a debt and misuse of his grandmother's assets; they were not based on his occupancy of the property and therefore do not arise under the RHA. Although the remaining three claims—ejectment, *mesne* profits, and trespass—do relate to appellant's use of the property, DeIuliis made no reference to the Rental Housing Act in asserting them. Rather, he grounded his ejectment

and *mesne* profits counts in D.C. Code §§ 16-1101 and -1109, respectively. And, while DeIuliis did not specify the legal basis for his trespass claim, this court has treated that cause of action as arising under the common law. *See, e.g.*, *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 110 (D.C. 2007) (deriving rule for assessing damages for trespass claim from "general principles of property and tort law"). Thus, because the counterclaims did not arise under the RHA, § 42-3509.02 does not entitle appellant to attorney's fees for prevailing on them either.

### 3.   Affirming on Alternative Grounds

We agree with the trial court's judgment but, because we deem its reasoning unpersuasive,[5] affirm based on the grounds expounded above instead. This court "may affirm a decision for reasons other than those given by the trial court," *Randolph v. United States*, 882 A.2d 210, 218 (D.C. 2005) (quoting *Purce v. United States*, 482 A.2d 772, 775 n.6 (D.C. 1984)), and we deem nothing improper

---

[5]   The court determined that appellant's complaint *did* arise under § 42-3505.01 but held that the RHA's fee-shifting rule did not apply. Both aspects of this holding are flawed. First, for the reasons stated previously, appellant's complaint did not arise under § 42-3505.01; second, if it had, § 42-3509.02 would not bar recovery. That provision only prohibits fee awards to parties who prevail in "*actions for eviction* authorized under § 42-3505.01." D.C. Code § 42-3509.02 (emphasis added). A claim that *contests* an eviction—like the one raised in appellant's complaint in the civil case—is not an "action for eviction" and therefore § 42-3509.02's exception would not apply to it.

about invoking that authority here. First, doing so does not usurp the trial court's discretion. Our holding turns on whether the claims in the civil case arise under § 42-3505.01, a question of law over which the trial court has no discretion. *See Twyman*, 655 A.2d at 855.

Second, relying on alternative grounds is not procedurally unfair. Although the trial court did not analyze the legal basis of the claims in the civil case, appellant appears to have foreseen that we would. His brief on appeal asserts that, in our 2014 MOJ, we referenced the RHA "at least a dozen" times and "clear[ly] . . . concluded that Mr. Segreti prevailed and did so under the RLA [*sic*]." This analysis—which, as noted previously, misconstrues our prior decision, see note 3, *supra*—is most plausibly read as an attempt to persuade this court that the civil case involved RHA causes of action. Moreover, in the Superior Court, the defendants raised versions of the arguments on which we rely. After appellant moved the court to reconsider its denial of fees, defendant Antoinette Witt filed an opposition in which she asserted—admittedly without analysis or reference to supporting authority—that appellant's complaint did not arise under the Rental Housing Act. Similarly, in their "Answer to Plaintiff's Motion for Attorney's Fees," the defendants argued that their counterclaims were not predicated on the RHA. Appellant filed replies to both oppositions and, in each one, raised cursory

challenges to the defendants' arguments. Thus, appellant had notice and an opportunity to demonstrate that the civil case involved RHA claims; there is nothing unfair about denying him fees based on his failure to devote more attention to this point.[6]

## B. The Administrative Case

Appellant also sought fees under § 42-3509.02 for legal services rendered in the administrative case and argues that the trial court erred by refusing to consider that claim. Here, the decision not to award fees under § 42-3509.02 did not turn on a question of statutory interpretation and, consequently, we review the court's decision for abuse of discretion. *See Jerome Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 186 (D.C. 1996). The trial court did not hold that it lacked authority to award the fees appellant requested; rather, it chose

---

[6] Appellant also complains that the Superior Court proceedings were unfair because the court "never suggested" that it might deny him fees altogether. To the contrary, before appellant filed his renewed motion for fees, the court indicated that his entitlement to relief remained an open question. For example, it asked the parties to analyze the "factors involved in my consideration of *whether to approve* and . . . how much money to approve." (Emphasis added.) True, the court issued an order requiring appellant's fee motion to "follow the format of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)," a case that concerns the amount of fees to award, not whether to award any at all. But it was not reasonable for appellant to interpret the court's emphasis on this case as relieving him of the burden of proving an essential element of his claim.

to leave the matter to the agency, which the court determined could better balance the equities with respect to the way that distinct litigation was conducted. Although the administrative case and the civil case addressed similar issues, the court's decision to defer to the Rental Housing Commission on a matter over which that body presided was a reasonable choice. Assuming he complies with the relevant procedural rules, and is not barred by the statute of limitations, appellant may petition the Rental Housing Commission to award him fees; however, the trial court did not abuse its discretion in declining to resolve this claim.

### C. The Landlord-Tenant Case

We also reject appellant's common law contention that the court erred in declining to award attorney's fees in the landlord-tenant case—or in any of the other actions giving rise to this appeal—based on his opponents' alleged bad faith conduct. Under the common law, trial courts may award attorney's fees to the prevailing party if its "opponent acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Jung v. Jung*, 844 A.2d 1099, 1107 (D.C. 2004). We review

awards of fees under this exception to the American Rule for abuse of discretion.[7] *Id.* at 1108.

Here, appellant identified eighteen acts that he alleged the trust committed in bad faith. After considering these averments in detail, the trial court concluded that only one of the acts appellant listed—the attempt to evict him without judicial process—actually reflected bad faith. The trust's reliance on self-help left appellant's home without electricity for four days and without water for two. The trial court determined that he had received "sufficient[]" compensation for this harm, noting that the administrative law judge ("ALJ") awarded him $5,600 in punitive and trebled damages as a result of it. Appellant does not argue that the ALJ's order failed to remunerate him fully for the trust's reliance on self-help; nor does he contend that the trial court abused its discretion in concluding that the

---

[7] When appellant renewed his motion for fees, he simultaneously moved for summary judgment on that claim. As a result, he argues that we should assess the trial court's decision de novo, the standard used for reviewing summary judgment rulings. Yet, appellant cites no authority indicating that we should apply de novo review to an order considering a motion for fees filed under both Super. Ct. Civ. R. 54 (d)(2) and 56 (a). To the contrary, courts appear to have applied an abuse of discretion standard to cases in this posture. *See, e.g.*, *Mr. L. v. Sloan*, 449 F.3d 405, 406 (2nd Cir. 2006) (Sotomayor, J.), where the district court denied a claim for attorney's fees on summary judgment and the Second Circuit stated that it would review the "decision to grant or deny attorney's fees for abuse of discretion . . . [and] the district court's interpretation of the relevant fee-shifting statute *de novo*."

ALJ's remedy obviated the need to award him fees.  Appellant also does not argue that the trial court erred in concluding that his remaining allegations of bad faith did not actually deserve that label.  Indeed, appellant expressly "adopt[ed] and incoporat[ed]" the court's findings.

Instead, appellant simply asserts that the court erroneously failed to assess whether his allegations demonstrated bad faith when viewed collectively, rather than individually.  Notably, appellant did not raise this challenge in his motion to reconsider.  In any event, the trial court fully considered the interplay among his allegations.  Indeed, the court specifically stated that it "combined related items [raised in appellant's motion] and occasionally omitted items deemed insubstantial."  Consequently, we have no basis for disturbing its decision.

### III.  Conclusion

For the reasons stated, the judgment of the Superior Court is

*Affirmed.*