*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-FM-1384

NATALIE KHAWAM, APPELLANT,

v.

GRAYSON P. WOLFE, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DRB-921-09)

(Hon. Neal E. Kravitz, Trial Judge)
(Hon. Craig Iscoe, Motions Judge)

(Argued May 8, 2019                    Decided August 22, 2019)

*Ayesha N. Khan* for appellant.

*Sandra G. Wilkof* for appellee.

*Victoria Dorfman*, with whom *Dia Rasinariu* was on the brief, for Deborah Epstein, Domestic Violence Legal Empowerment and Appeals Project, National Organization for Women Foundation, DC Coalition Against Domestic Violence, National Coalition Against Domestic Violence, National Network to End Domestic Violence, National Women's Law Center, A. Rachel Camp, Mariela Olivares, Catherine F. Klein, and Laurie S. Kohn, *amici curiae*.

Before EASTERLY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*:  Appellant Natalie Khawam challenges an order requiring her to pay $350,000 in attorney's fees to her former husband, appellee Grayson P. Wolfe.  The fees were incurred in connection with a dispute over custody of their child.  The trial court awarded fees on the ground that Mr. Wolfe's hiring of an attorney was necessary to protect the welfare and best interests of the child.  Ms. Khawam argues that no fee award was warranted and that in any event the trial court erred in setting the amount of the award.  We uphold the trial court's ruling that a fee award was warranted, but we remand for further proceedings with respect to the amount of the award.

**I.**

This matter has previously been before this court.  *Khawam v. Wolfe* (*Khawam I*), 84 A.3d 558 (D.C. 2014).  The following background material is taken in significant part from our prior opinion, supplemented and revised as necessary to reflect subsequent developments.

Ms. Khawam and Mr. Wolfe married in April 2008 in Washington, D.C. *Khawam I*, 84 A.3d at 561.  Their son was born in October 2008 in the District.  *Id.* After the parties had a bitter argument in early March 2009, Ms. Khawam left the

District for Tampa, Florida, taking the couple's child with her against Mr. Wolfe's express objections. *Id.* at 562. Mr. Wolfe repeatedly demanded that Ms. Khawam disclose her location and return with the child, but Ms. Khawam refused. *Id.* Several weeks after Ms. Khawam left for Florida, Mr. Wolfe filed a complaint here in the District seeking custody of the child. *Id.* Aware of the pending lawsuit in the District, but not yet served with process, Ms. Khawam filed a petition for divorce and custody of the child in Florida state court. *Id.*

In early April 2009, the Superior Court issued an ex parte order granting Mr. Wolfe temporary sole custody of the child. *Khawam I*, 84 A.3d at 562. Ms. Khawam then sought an ex parte temporary "stay-away" injunction against Mr. Wolfe in Florida, alleging that Mr. Wolfe had committed acts of child abuse and domestic violence. *Id.* A Florida state court granted the requested temporary injunction and subsequently issued additional temporary injunctions. *Id.* In June 2010, however, the Florida state court determined that it lacked jurisdiction over Ms. Khawam's divorce petition and domestic-violence petitions and therefore dismissed the petitions and the corresponding temporary injunctions. *Id.*

Ms. Khawam moved to dismiss Mr. Wolfe's custody case in the District, arguing that the Superior Court lacked jurisdiction under the District of Columbia's

Uniform Child-Custody Jurisdiction and Enforcement Act, D.C. Code § 16-4601.01 et seq. (2012 Repl.) (UCCJEA), and that the District was an inconvenient forum. *Khawam I*, 84 A.3d at 562. After an eighteen-day evidentiary hearing, the trial court denied the motion to dismiss. *Id.* In May 2010, Mr. Wolfe filed for divorce in the Superior Court. *Id.* The custody and divorce cases were consolidated. *Id.* The court granted sole custody of the child to Mr. Wolfe, but allowed Ms. Khawam supervised visitation with the child. *Id.* After the divorce trial, the court issued a judgment of absolute divorce. *Id.*

Mr. Wolfe sought an award of over $700,000 in attorney's fees and costs incurred during the custody and divorce litigation. *Khawam I*, 84 A.3d at 573. Mr. Wolfe relied on three separate legal theories: the common-law "necessaries" doctrine, which in certain circumstances permits an award of attorney's fees in a child-custody case if the court finds that engaging an attorney was necessary to protect the interests of the child; the "bad faith" exception, which permits a fee award against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons connected to the litigation; and a statutory provision authorizing payment of "suit money," including attorney's fees, in divorce proceedings. *Id.* at 573-74. In 2012, the trial court awarded Mr. Wolfe $350,000 under the necessaries doctrine, but expressly declined to decide whether Mr. Wolfe was entitled to an award under

the other two theories. *Id.* at 574. The trial court instead provided that Mr. Wolfe could renew his request for fees and costs under the other two theories in the event the $350,000 award was disturbed on appeal, or if Mr. Wolfe wished to seek a larger award under the alternative grounds. *Id.*

In February 2014, this court affirmed the custody order, the initial visitation order, and the judgment of divorce; vacated and remanded an order denying Ms. Khawam's motion to modify the custody order; and dismissed the appeal from the award of attorney's fees for lack of a final order. *See generally Khawam I*, 84 A.3d 558. With respect to attorney's fees, we held that the trial court's order was not final because it did not definitively determine the amount of fees to which Mr. Wolfe was entitled. *Id.* at 574-76.

On remand, the parties resolved the remaining custody issues, entering into a judicially approved settlement agreement in November 2014. That agreement was silent on fees. The issue of fees was not raised again before the Superior Court until October 2017, when Mr. Wolfe asked the court to enter the $350,000 award as a judgment.

The Superior Court granted Mr. Wolfe's motion. The trial court determined that, although the attorney's fee award was non-final when issued, it "became final after the time lapsed for Mr. Wolfe to renew his arguments for attorney's fees under one of his alternate legal theories." According to the trial court, that time lapsed, at the latest, in December 2014. The trial court entered judgment in the amount of $350,000, plus post-judgment interest.

## II.

We first address Mr. Wolfe's argument that this appeal is untimely. We disagree. "The notice of appeal in a civil case must be filed . . . within 30 days after entry of the judgment or order from which the appeal is taken." D.C. App. R. 4(a)(1). The initial attorney's fee order was entered in 2012, but that order was not final and did not begin the running of an appeal period. No further order relating to attorney's fees was entered until November 21, 2017, and Ms. Khawam appealed from that judgment on December 6, 2017. Ms. Khawam thus has timely invoked our jurisdiction.

Mr. Wolfe argues, however, that the 2012 attorney's fee order became final by December 2014, because (1) a new final judgment on the merits was entered in

November 2014, based on the settlement agreement; (2) under Super. Ct. Dom. Rel. R. 54(d), Mr. Wolfe had fourteen days thereafter within which to seek a further fee award; (3) Mr. Wolfe did not seek a further fee award; and (4) once the fourteen-day period ran, the 2012 order became final and appealable. We are not persuaded by this line of reasoning. First, the original attorney's fee award was based on the proceedings leading up to the award of permanent custody, which this court affirmed in *Khawam I*, 84 A.3d 558. The 2014 settlement agreement, however, related to pending motions to modify, so the final judgment created by the Superior Court's approval of that agreement was distinct from the earlier final judgment to which the initial fee award had related. Second, the initial fee award did not specify a time within which Mr. Wolfe was required to seek additional fees relating to the proceedings leading up to the award of permanent custody. Although we do not doubt that Mr. Wolfe would have been required to seek any such additional fees within a reasonable period of time, we do not think it is clear on what specific date a reasonable time would have run. Under the circumstances, we conclude that it was permissible for Ms. Khawam to seek review from the 2017 order that definitively determined that Mr. Wolfe was foreclosed from seeking any additional fees relating to the initial proceedings and that entered final judgment for Mr. Wolfe in the amount of $350,000.

**III.**

We next address whether an award of attorney's fees under the necessaries doctrine was permissible in this case. We hold that such an award was permissible.

This jurisdiction generally follows the "American Rule" regarding attorney's fees. *E.g.*, *Doe v. Burke*, 133 A.3d 569, 574 n.7 (D.C. 2016). Under that approach, each party is responsible for its own attorney's fees. *E.g.*, *Segreti v. Deiuliis*, 193 A.3d 753, 756 (D.C. 2018). That approach has exceptions, however, including certain "narrowly defined common law exceptions." *6921 Ga. Ave., N.W., Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 971 (D.C. 2008). One such exception is the necessaries doctrine. *Khawam I*, 84 A.3d at 573-74. *See generally, e.g.*, *Launay v. Launay, Inc.*, 497 A.2d 443, 449-50 (D.C. 1985) (noting common-law exceptions for bad-faith litigation and preservation of common fund).

We first recognized the necessaries doctrine in *Paine v. Paine*, 267 A.2d 356 (D.C. 1970). In *Paine*, we upheld an award of attorney's fees to a mother who successfully defended against a father's attempt to challenge a divorce decree that gave the mother custody of the couple's minor children. *Id.* at 357. We explained that although "no statute specifically authoriz[ed] counsel fees in this type of

proceeding," the trial court had authority to make an attorney's fee award "as reimbursement to [the mother] for necessaries for the minor children." *Id.* As we further explained, "when the court finds that the engagement of counsel by the mother was necessary to protect the interests and welfare of the children . . . [,] the court may require the father to reimburse the mother for sums reasonably expended by her for counsel fees." *Id.* at 358.

We have since applied the necessaries doctrine in a variety of procedural contexts. *E.g.*, *Assidon v. Abboushi*, 16 A.3d 939, 942-43 (D.C. 2011) (affirming trial court's authority to grant fees to mother under necessaries doctrine with respect to proceedings initiated by mother under emergency-jurisdiction provision of UCCJEA, resulting in award of temporary custody to mother and supervised visitation to father; describing necessaries doctrine as "authorizing trial courts to grant attorney's fees where the court finds that counsel was necessary to protect the interests of the children") (internal quotation marks omitted); *Martin v. Tate*, 492 A.2d 270, 273 (D.C. 1985) (same with respect to custody action filed by mother where no prior custody order had been entered but mother had had "de facto" custody of children); *Eisenberg v. Eisenberg*, 357 A.2d 396, 401-02 (D.C. 1976) (per curiam) (same with respect to custody action initiated by mother, where mother initially had legal custody under settlement agreement, mother subsequently agreed

to let children live with father, and mother thereafter sought to regain custody of children).

In sum, under the necessities doctrine, "[i]n a custody dispute, a trial court is authorized to grant attorney's fees where the court finds that counsel was necessary to protect the interests of the child." *Kenda v. Pleskovic*, 39 A.3d 1249, 1257 (D.C. 2012) (brackets and internal quotation marks omitted). The trial court in this case found that retention of counsel was necessary to protect the best interests of the child. Ms. Khawam does not challenge that finding. It would seem to follow that an award under the necessaries doctrine was legally permissible. Ms. Khawam argues, however, that the necessaries doctrine applies only in certain procedural contexts and does not extend to the present case. We disagree.

Ms. Khawam struggles in trying to define the procedural limits she believes apply to the necessaries doctrine. At times she seems to argue that the doctrine is limited to cases in which a parent "defend[s] against a challenge to a pre-existing permanent custody award." Such a limitation, however, would contradict our approval of the doctrine's application in cases such as *Martin*, 492 A.2d at 273, which involved a prior de facto custodial arrangement.

Somewhat more broadly, Ms. Khawam argues that the doctrine is applicable only where a parent has "defend[ed] or enforce[ed] a pre-existing permanent custody award or de facto arrangement." Ms. Khawam acknowledges, however, that this formulation is contrary to our decision in *Assidon*, 16 A.3d at 943, which applied the necessaries doctrine to a case in which a parent obtained a temporary custody award under the UCCJEA. Ms. Khawam contends that *Assidon* is not binding upon us, because the court in *Assidon* only assumed rather than decided that the necessaries doctrine permitted an award in the procedural context at issue. To the contrary, this court in *Assidon* expressly addressed whether the necessaries doctrine applied in the specific procedural context of the case, holding that it did. 16 A.3d at 942-43. We are bound by that holding. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).

Even more broadly, Ms. Khawam argues in the alternative that the necessaries doctrine is applicable only where a parent has defended or enforced a preexisting permanent custody award, a preexisting de facto custody arrangement, or a preexisting temporary custody award that was based on abandonment or abuse and was not issued ex parte. We are also unpersuaded by this proposed formulation, for three reasons.

First, our cases undermine rather than support Ms. Khawam's proposed limitations. It is true that some of our prior cases have explained the rationale for the necessaries doctrine with reference to the particular procedural context of the case before the court. *E.g.*, *Maybin v. Stewart*, 885 A.2d 284, 288 (D.C. 2005) ("[W]hen counsel is required by the party in whose custody the court has deemed to have been in the child's best interests, attorney's fees may be granted to that party in defending such grant.") (brackets and internal quotation marks omitted). But Ms. Khawam has pointed to no case, and we have found no case, in which this court has explicitly limited the scope of the necessaries doctrine to particular procedural contexts. To the contrary, this court has repeatedly described the doctrine broadly, as applicable in custody cases "where the court finds that counsel was necessary to protect the interests of the child." *Kenda*, 39 A.3d at 1257 (brackets and internal quotation marks omitted). We thus agree with the conclusion of the trial court in *Rifka v. Dillenburg*, No. 03-DRB-3204, 2011 D.C. Super. LEXIS 10, at *15 (D.C. Super. Ct. Oct. 20, 2011):

> In the more than forty years in which the necessaries doctrine has been a part of the common law in the District of Columbia, the only finding ever held essential to the court's authority to award fees is the determination that the retention of counsel was necessary to protect the welfare and best interests of the child.

Second, it is unclear how courts would properly apply the limitations advocated by Ms. Khawam. For example, in the present case, Ms. Khawam's departure from the District with the child upset the preexisting de facto and de jure custody arrangement: the parties shared joint legal and physical custody of the child. *See, e.g.*, *Martin*, 492 A.2d at 273 ("[W]e recognize that, in the absence of a custody decree, each parent has an equal right to the custody of his or her children . . . ."). The custody proceeding in this case thus can naturally be understood as Mr. Wolfe's effort to enforce that preexisting custodial right and arrangement. On that understanding, an award pursuant to the necessaries doctrine would be permissible in this case even under the formulation of the doctrine advocated by Ms. Khawam.

Third, we see no logical connection between the purposes of the necessaries doctrine and the procedural limitations proposed by Ms. Khawam. For example, imagine a case in which two married parents are living together and one realizes that the other is physically abusing their child. If that parent pays an attorney to successfully bring a custody action, thereby protecting the child from serious physical abuse, the justification for awarding fees under the necessaries doctrine seems at least as strong as the justification in our prior cases upholding the application of the necessaries doctrine.

We are not persuaded by Ms. Khawam's remaining arguments. First, Ms. Khawam and *amici* contend that the necessaries doctrine must be read narrowly in order to reduce the effects of implicit bias on custody decisions, particularly where claims of domestic violence are raised. We do not doubt that implicit bias is a matter of real concern. *See, e.g.*, *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 550 (E.D. Pa. 2018) ("[T]he judiciary has come to recognize the challenges judges face in overcoming implicit bias . . . ."). We also do not doubt that implicit bias is a matter of concern in the particular context of family law. *See generally*, *e.g.*, Deborah Epstein & Lisa A. Goodman, *Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences*, 167 U. Pa. L. Rev. 399 (2019). But we do not think that concern about implicit bias justifies imposing arbitrary and formalistic limits on the necessaries doctrine.

Second, Ms. Khawam argues that the necessaries doctrine must be limited, to avoid turning what was intended to be a "narrowly defined common law exception[]," *6921 Ga. Ave., N.W., Ltd. P'ship*, 954 A.2d at 971, into a rule that the prevailing party in a custody case is always entitled to an award of attorney's fees. Here too we understand Ms. Khawam's concern but disagree with her proposed solution. For the reasons we have explained, we see no basis for imposing arbitrary procedural limitations on the scope of the necessaries doctrine. We do, however,

agree that the necessaries doctrine is not properly understood to be a general fee-shifting provision in child-custody cases. Rather, an award under the doctrine is permissible only if the trial court finds that "counsel was *necessary* to *protect* the interests of the child[]." *Eisenberg*, 357 A.2d at 401 (emphasis added). For the doctrine to be properly applied as a narrow exception, trial courts must require more than merely that counsel was helpful to a party who on balance prevailed on an issue of custody. As we have previously noted, Ms. Khawam does not challenge on appeal the trial court's case-specific finding that counsel was necessary in this case to protect the child's interests. We therefore have no occasion to address that finding.

## IV.

We finally turn to Ms. Khawam's two challenges to the amount of the award.

## A.

Ms. Khawam argues that the trial court was required to exclude all fees arising from the portion of the trial-court proceedings that were directed at determining whether the trial court had jurisdiction under the UCCJEA. More specifically, Ms. Khawam argues as follows: (1) the UCCJEA expressly provides for attorney's fees

in certain circumstances, D.C. Code § 16-4602.08(c) (requiring award of fees where court declines to exercise jurisdiction based on unjustifiable conduct of party); D.C. Code §§ 16-4603.02, -4603.03, -4603.12 (requiring court to award fees to prevailing party in action to enforce child-custody order or order for return of child under Hague Convention on the Civil Aspects of International Child Abduction); (2) the UCCJEA does not provide for a fee award in the circumstances of the present case; and (3) the UCCJEA thus implicitly precludes a fee award under the common-law necessaries doctrine. We are not convinced by this argument.

First, although the UCCJEA does not itself provide for a fee award in the circumstances of this case, the UCCJEA also does not explicitly foreclose such an award. In general, statutory provisions explicitly providing for attorney's fees in certain circumstances are not understood to implicitly abrogate well-settled common-law doctrines permitting fee awards. *See, e.g.*, *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (statute providing for award of attorney's fees to prevailing plaintiff "does not preclude application of the common law rule that a prevailing defendant may obtain attorneys' fees if the plaintiff litigated in bad faith").

Second, nothing in the legislative history of the District of Columbia's enactment of the UCCJEA suggests that the UCCJEA was intended to preclude attorney's fee awards under preexisting common-law exceptions such as the bad-faith exception or the necessaries doctrine. *See generally* D.C. Council, Report on Bill 13-608 (Nov. 30, 2000). The same is true of the commentary regarding the fee provision in the model UCCJEA. UCCJEA § 312, 9 U.L.A. 699-700 (1999). The absence of any such indication in the pertinent legislative-history materials tends to suggest that the fee provisions in the UCCJEA were not intended to displace well-settled common-law exceptions such as the necessities doctrine. *Cf., e.g.*, *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 452 n.26 (2005) (noting that "the lengthy legislative history is barren of any indication that Congress meant to abrogate . . . common-law duties").

Third, Ms. Khawam has not cited, and we have not found, any case holding that the UCCJEA's fee provisions implicitly preclude fee awards under common-law exceptions to the American Rule.

For the foregoing reasons, we conclude that the trial court was not required to exclude from the fee award all work done in connection with the UCCJEA phase of the proceedings in this case.

**B.**

Ms. Khawam also argues that the trial court considered impermissible factors in setting the amount of the award. We agree.

In ruling on a motion for attorney's fees, a trial court must undertake a two-step inquiry: first, the court must decide whether to award a fee; and second, the court must set the amount of the fee. *Steadman v. Steadman*, 514 A.2d 1196, 1200-01 (D.C. 1986) (per curiam). In setting the amount of the fee under the necessaries doctrine, "among the factors the court should consider are the quality and nature of the services performed, the necessity for the services, the results obtained from the services, and the financial ability of the spouse being ordered to pay." *Id.* at 1200. On the other hand, whether the litigation has been "burdensome to the party seeking the award" and "the motivation and behavior of the litigating parties" are factors "properly used only in coming to a determination of whether any award shall be made; once the threshold is crossed, these preliminary factors may play no role in deciding the amount of the fee to be awarded." *Id.*

In setting the amount of the award in this case, the trial court extensively discussed the outcome of the litigation, the difficulty of the case, the nature and quality of the attorney's services, the reasonableness of the fees sought, and the ability of the parties to pay attorney's fees. All of those factors were appropriate to consider. *Steadman*, 514 A.2d at 1200. The trial court also considered, however, whether the litigation had been oppressive and the motivation and behavior of the parties. In summarizing its decision as to the amount of the fees, the trial court stated that

> the outcome of the litigation, the complexity of the case, the burdensomeness to Mr. Wolfe, and the bad faith motivation and behavior exhibited by Ms. Khawam all weigh heavily in favor of a substantial award of attorney's fees to Mr. Wolfe . . . . [T]he court, having balanced all of the relevant factors, concludes that an award of $350,000 is appropriate under the circumstances . . . .

The court also explained that an award of $350,000 would be about "half of the reasonable attorney's fees and costs sought by Mr. Wolfe in this case," and reasoned that Ms. Khawam "should bear at least this share of the extraordinary financial burden her even more extraordinary conduct has imposed on Mr. Wolfe." In our view, the trial court's statements explicitly based the amount of the fee award in part on the impact of the litigation on Mr. Wolfe and the bad-faith motivation of Ms. Khawam.

Mr. Wolfe has not argued that any error was harmless. We have the authority to consider harmlessness sua sponte, but we have held that we will do so "only when harmlessness is obvious." *Randolph v. United States*, 882 A.2d 210, 222-23 (D.C. 2005). *See generally* D.C. Code § 11-721(e) (2012 Repl.) ("On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). We do not view it as obvious that the error in this case was harmless. To the contrary, we conclude that the error was not harmless, because it is quite possible that the trial court's decision to fix the fee award at $350,000 was affected by the trial court's consideration (mentioned twice) of Ms. Khawam's misconduct and the burdens that misconduct placed on Mr. Wolfe. *Cf., e.g.*, *In re Perry*, 151 A.3d 904, 908 (D.C. 2017) (vacating judgment because court was not confident that error would not have affected outcome of proceeding). We therefore are required to remand the case for the trial court to reconsider the amount of the award, taking into account only permissible factors.

For the foregoing reasons, we vacate the judgment of the Superior Court and remand for further proceedings.

*So ordered.*